**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Mika GERGEN, Defendant–Appellant.**

No. 97–30324.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 6, 1998.

Decided April 16, 1999.

Daniel Donovan, Assistant Federal Defender, Great Falls, Montana, for the defendant-appellant.

Kris A. McLean, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellee.

Before: CANBY, and TASHIMA, Circuit Judges, and TAKASUGI,* Senior District Judge.

TAKASUGI, Senior District Judge:

Mika Gergen ("Gergen") appeals from a judgment of conviction and sentence for violating 26 U.S.C. § 5861(d), arguing that the Supreme Court's holding in *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), requires the government to prove that he knew of the particular characteristics of the shotgun which made the shotgun illegal under the National Firearms Act (the "Act"). Gergen maintains that the district court erroneously removed the *mens rea* element required under the Act, that the jury was not presented with sufficient evidence to convict him based on the proper *mens rea* requirement, and that the district court erred in applying U.S.S.G. § 2K2.1(b)(5), the sentencing guideline for firearms offenses, rather than U.S.S.G. § 2T1.1, the sentencing guideline for tax offenses, in determining his sentence.

We determine that *Staples, supra*, requires the government to prove that the defendant knew of the particular characteristics of his shotgun which made the shotgun subject to the Act. In its supplemental instruction to the jury, the district court eliminated that essential element of § 5861(d). We therefore reverse Gergen's conviction. Because we hold that the government presented *mens rea* evidence at the trial sufficient to support a conviction, we remand this matter to the district court for retrial.

* The Honorable Robert M. Takasugi, Senior United States District Judge for the Central District of California, sitting by designation.

## BACKGROUND

On October 5, 1995, in Missoula, Montana, Mika Gergen, driving his mother's car, picked up a friend, Nate, who sat in the front passenger seat after placing a shotgun wrapped and covered by a jacket in the back seat. Nate also had in his possession a .22 caliber revolver. Gergen thereafter picked up three other friends, one of whom, Chenoa, took over as the driver. Gergen sat in the back seat of the car.

While they were driving around the city, Nate began to play with his .22 caliber revolver and accidentally shot Chenoa, who then stopped the car on the side of the road. Gergen exited and placed Chenoa in the back seat.

Gergen resumed driving the car and was driving towards a hospital when a tire blew out. Gergen flagged down a passing motorist, who agreed to take Chenoa to the hospital. Nate fled the scene.

Sometime after Chenoa had been shot, Gergen moved the jacket-wrapped shotgun to the floor of the car.

Two Missoula Police Department detectives observed this commotion and overheard one of the individuals state that the driver had been shot. Thereafter, the detectives took Gergen into custody for questioning.

Although it is unclear at what point Gergen became aware of the shotgun, he stated that a shotgun was on the floor of the car when later questioned by a sergeant of the Missoula County Sheriff's Office. The shotgun was retrieved and measured. The shotgun was a .12 gauge with a modified barrel. While the shotgun had an overall length of 25 ⅝ inches, the barrel had been "sawed-off" to a length of 13 ½ inches. An examination of the shotgun for fingerprints revealed an identifiable latent

print made by the middle finger of Gergen's right hand.

Gergen was indicted on August 26, 1996, and charged with possessing a sawed-off shotgun in violation of 26 U.S.C. § 5861(d) which makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). "The term 'firearm' means ... (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length ..." 26 U.S.C. § 5845(a). The district court instructed the jury that:

> [W]ith respect to the charge in the indictment that [Gergen] is charged with possessing the firearm, namely, a sawed-off shotgun, in violation of 26 U.S.C. § 5861, in order to find [Gergen] guilty the Government must prove each of the following elements beyond a reasonable doubt.
>
> First, that [Gergen] at the time and place charged in the indictment possessed a firearm, namely, a sawed-off shotgun.
>
> Second, that he did so knowingly.
>
> Third, that [Gergen] was aware of the features of the sawed-off shotgun that brought it within the scope of the firearm definition.
>
> And, fourth, that [Gergen] had not registered his possession of the firearm in the National Firearms Registration and Transfer Record.

During closing argument, Gergen's counsel argued to the jury that the government was required to prove that defendant knew the shotgun was illegal and that the government had failed to meet its burden. After closing argument, government counsel objected to defense counsel's argument and requested further instruction. The district court agreed with government counsel but refused to further instruct the jury finding that the prosecution had failed to make a timely objection.

During the course of deliberations, the jury requested further instruction from the district court. Specifically, the jury requested "clarification of the third part of the indictment." The district court determined that the jury request referred to the third element of the instruction and sought to clarify the element for the jury. After reading *Staples, supra,* and hearing further argument from counsel, the district court instructed the jury as follows:

> SUPPLEMENTAL INSTRUCTION. The Government is not required to show that the defendant specifically knew: (1) the barrel length of the shotgun was less than 18 inches, or (2) the overall length of the shotgun was less than 26 inches.

The jury found Gergen guilty of possessing a sawed-off shotgun in violation of § 5861(d). At sentencing, Gergen requested that the trial court apply the tax offense sentencing guideline § 2T1.1 rather than the firearms offense conduct sentencing guideline § 2K2.1. The trial court denied Gergen's request and sentenced Gergen to 46 months incarceration based on the court's application of § 2K2.1.

## DISCUSSION

Gergen claims that the Supreme Court's holding in *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), requires the government to prove that Gergen knew of the particular characteristics of the sawed-off shotgun in his possession to prove that Gergen violated 26 U.S.C. § 5861 and that, therefore, the district court's supplemental instruction caused reversible error. The government contends that the supplemental instruction was justified as a correction and clarification to the jury due to the confusion caused by the defense argument that the government was required to prove defendant knew the shotgun was illegal.

It is unlawful under 26 U.S.C. § 5861(d) for any person to receive or possess a "firearm," as defined by the Act, which is not registered under the National Fire-

arms Registration and Transfer Record. Congress has specifically determined that a shotgun[1] having "a barrel or barrels of less than 18 inches in length" or a modified shotgun with "an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length" are "firearms" under the Act. 26 U.S.C. §§ 5845(a)(1) and (2). It is noteworthy that "Congress did not ... extend this provision to all 'firearms' as that term is commonly understood, nor to all 'sawed-off shotguns.'" *United States v. Reyna*, 130 F.3d 104, 107 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1328, 140 L.Ed.2d 489 (1998).

In the Ninth Circuit prior to the 1994 *Staples* decision, the government was not required to prove that a defendant knew of the specific characteristics of the firearm that made the firearm subject to registration. *See United States v. O'Mara*, 963 F.2d 1288, 1291 (9th Cir.1992) (determining that the defendant knowingly possessed a firearm where external modifications sufficiently showed that the firearm was subject to regulation). In fact, the *O'Mara* court identified two exceptions where the government was specifically required to prove a defendant's *mens rea* as to the specific characteristics of the firearm. *See id.* (i.e., where a weapon was subject to regulation due to internal modifications, *see United States v. Evans*, 978 F.2d 1112, 1114 (9th Cir.1992), *cert. denied*, 510 U.S. 821, 114 S.Ct. 78, 126 L.Ed.2d 46 (1993), or where a weapon did not appear to be dangerous, *see United States v. Kindred*, 931 F.2d 609, 612 (9th Cir.1991)).

The Supreme Court in *Staples v. United States*, considered the *mens rea* issue and held as follows:

In short, we conclude that the background rule of the common law favoring *mens rea* should govern interpretation of § 5861(d) in this case. Silence does not suggest that Congress dispensed with *mens rea* for the element of § 5861(d) at issue here. Thus, to obtain a conviction, the Government should have been required to prove that petitioner knew of the features of his [weapon] that brought it within the scope of the Act.

511 U.S. at 619, 114 S.Ct. 1793 (1994).

In *Staples*, the defendant was convicted by an Oklahoma trial court under § 5681(d) for possession of an unregistered machinegun.[2] The machinegun had been a previously legal, semi-automatic weapon that had been internally modified to be capable of fully automatic fire. The trial court specifically instructed the jury that the government did not have to prove that the defendant knew all of the characteristics of the machinegun which made it subject to regulation. *Id.* at 604, 114 S.Ct. 1793. The instruction was subsequently appealed to the Tenth Circuit and affirmed. *Id.*

The *Staples* Court distinguished an earlier decision in *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), which addressed a different issue— whether *mens rea* was required as to the fact of registration rather than as to the requirement of registration. *See Staples*, 511 U.S. at 608–12, 114 S.Ct. 1793. In *Freed*, the defendant was found guilty in the trial court of possessing hand grenades in violation of § 5681(d). The *Freed* Court held that the government was not required to specifically prove that the defendant knew that the hand grenades were unregistered. *Id.* at 609, 91 S.Ct. 1112. This holding was based on the fact that hand

---

1. A shotgun is a weapon designed and intended to be shot from the shoulder and further designed to "use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger." 26 U.S.C. § 5845(d).

2. Generally, a machinegun is "any weapon which shoots ... automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b).

grenades "are highly dangerous offensive weapons," and that the defendant knew he possessed a dangerous weapon which was not entirely innocent in and of itself. *Id.,* citing, *Freed,* 401 U.S. at 609, 91 S.Ct. 1112. Because Freed freely admitted that he knew he possessed hand grenades, whether a defendant must have knowledge of the characteristics which trigger the registration requirement was not raised or considered.

The *Staples* Court considered whether their analysis in Freed should apply to guns as highly dangerous devices that should alert their owners to the probability of regulation and reasoned that not all guns are of the same character as hand grenades. *Id.* The Court further reasoned that some categories of guns, including sawed-off shotguns, may have a quasi-suspect character which may be similar to hand grenades. *See id.* at 611–12, 114 S.Ct. 1793. Firearms not of a quasi-suspect character "cannot be said to put gun owners sufficiently on notice of the likelihood of regulation to justify interpreting § 5861(d) as not requiring proof of knowledge of a weapon's characteristics." *Id.* at 612, 114 S.Ct. 1793. However, the *Staples* Court declined to differentiate quasi-suspect firearms from other firearms and instead clearly held that a violation of § 5861(d) requires that a defendant know of the particular characteristics that bring his weapon within the scope of the Act, regardless of the quasi-suspect nature of the weapon. *Id.* at 619, 114 S.Ct. 1793.

After the Supreme Court's decision in *Staples,* six circuits directly addressed the *mens rea* requirement for a § 5681(d) violation and required the government to prove that the defendant knew of the particular characteristics that subjected his sawed-off shotgun to registration.[3] *See United States v. Reyna,* 130 F.3d 104 (applying *Staples* to sawed-off shotguns);

*United States v. Owens,* 103 F.3d 953, 956 (11th Cir.) (requiring *mens rea* for the characteristics of a rifle with a barrel less than 16 inches long), *cert. denied,* —— U.S. ——, 118 S.Ct. 44, 139 L.Ed.2d 11 (1997); *United States v. Edwards,* 90 F.3d 199 (7th Cir.1996); *United States v. Mains,* 33 F.3d 1222 (10th Cir.1994); *United States v. Starkes,* 32 F.3d 100 (4th Cir.1994); *see also United States v. Dewalt,* 92 F.3d 1209, 1212 (D.C.Cir.1996) (the *mens rea* requirement was conceded by the government).

Only the Eighth Circuit has departed from this reading of *Staples* by holding, in *United States v. Barr,* 32 F.3d 1320 (8th Cir.1994), that because the modified, shortened barrel and shorter overall length of a sawed-off shotgun render it "quasi-suspect," the government need only prove that the defendant possessed and observed the sawed-off characteristics of the shotgun for a § 5681(d) violation. *See Barr,* 32 F.3d at 1324.

The Eighth Circuit in *Barr,* eliminated the *mens rea* requirement for sawed-off shotguns stating that *Staples* had held that sawed-off shotguns were of the same quasi-suspect character as hand grenades, and that the possession of a quasi-suspect weapon cannot be innocent. *Id.* The *Barr* court, in reliance on *Staples'* discussion of *Freed,* held that, because there is a legitimate expectation that a quasi-suspect weapon is subject to regulation, "a common sense evaluation indicates that a specific finding of knowledge of the weapon's incriminating characteristics is unnecessary." *Id.* (internal citation omitted).

However, the Supreme Court clearly stated that the *Freed* Court's determination "that a defendant need not know that his weapon is unregistered suggests no conclusion whether § 5861(d) requires the defendant to know of the features that make his weapon a statutory firearm."

---

3. This circuit previously considered this issue post-*Staples* and recognized that a common-sense evaluation would indicate that the shortened barrel of a sawed-off shotgun creates a reasonable expectation that the firearm is subject to regulation in *United States v. Imes,* 80 F.3d 1309 (9th Cir.1996). However, *Imes* was subsequently withdrawn by 91 F.3d 1210 (9th Cir.1996), and this panel considers the ramification of *Staples* on a clean slate.

*Staples*, 511 U.S. at 609, 114 S.Ct. 1793. The *Staples* Court went on to emphasize the difference between the issue before it and that before the *Freed* Court:

> Moreover, our analysis in *Freed* likening the Act to the public welfare statute in *[United States v.] Balint[*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922) ] rested entirely on the assumption that the defendant *knew* that he was dealing with hand grenades—that is, that he knew he possessed a particularly dangerous type of weapon (one within the statutory definition of a "firearm"), possession of which was not entirely "innocent" in and of itself. [Citation.] The predicate for that analysis is eliminated when, as in this case, the very question to be decided is *whether* the defendant must know of the particular characteristics that make his weapon a statutory firearm.
>
> \*   \*   \*   \*   \*   \*
>
> ... [T]he gap between *Freed* and this case is too wide to bridge.

511 U.S. at 609–10, 114 S.Ct. 1793. Because of this difference in the element in issue in *Freed*, the *Staples* Court went on to hold that although *mens rea* was not required as to the fact of registration under *Freed*, *mens rea* was still required as to the requirement of registration. In other words, to obtain a conviction, it must be proved that a defendant knew of the characteristics of his weapon that make it a "firearm" as that term is defined in the Act. *Id.* at 619, 114 S.Ct. 1793.

## Supplemental Jury Instruction

■ With this understanding of *Staples*, we turn to the supplemental jury instruction given during deliberations in response to the jury's request for clarification and review *de novo* whether the instruction properly stated the elements of a statutory crime. *See United States v. Petrosian*, 126 F.3d 1232, 1233 n. 1 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1101, 140 L.Ed.2d 156 (1998).

■ Clearly, the instruction negated the prior instruction which had required the government to prove "that [Gergen] was aware of the features of the sawed-off shotgun that brought it within the scope of the firearm definition." As such, it erroneously eliminated the *mens rea* requirement for a § 5861(d) violation. The *mens rea* requirement is an essential element of a § 5861(d) violation, and because the jury specifically requested further instruction as to the *mens rea* element, it is apparent the jury considered the *mens rea* element prior to finding Gergen guilty; the fact that the jury was influenced by the instruction is clear. Consequently, the district court's supplemental instruction was plain error as the error "had substantial and injurious effect or influence in determining the jury's verdict." *Roy v. Gomez*, 108 F.3d 242, 243 (9th Cir.) (*quoting*, *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)), *cert. denied*, —— U.S. ——, 118 S.Ct. 196, 139 L.Ed.2d 134 (1997); *United States v. Caldwell*, 989 F.2d 1056, 1060 (9th Cir. 1993) ("failing to instruct jurors about an essential element of a crime is constitutional error because it lets them convict without finding the defendant guilty of that element"). The district court's supplemental instruction eliminating the *mens rea* requirement of a § 5861(d) violation was prejudicial and seriously affected the fairness of the proceedings. We therefore reverse Gergen's conviction.

## Sufficiency of the evidence

■ Although Gergen's conviction is reversed, in order to determine whether there should be an acquittal or retrial upon remand, we must still consider Gergen's claim that the government failed to present sufficient evidence at trial to support a conviction. *See United States v. Bishop*, 959 F.2d 820, 828 (9th Cir.1992) (holding that the existence of alternative grounds for reversal does not avoid a review of the sufficiency of the evidence). "[T]he defendant who successfully challenges a conviction for insufficiency of the evidence is

entitled not only to a reversal of his conviction but also to an order directing the district court to enter a judgment of *acquittal* with respect to that conviction." *Id.*

The government contends that it is absurd to believe that Gergen was sitting on top of the sawed-off shotgun in question without knowing of its presence. The government also contends that it stretches credulity to argue that defendant, having handled the shotgun, did not become aware of the hacksawed barrel which extended only ¾ of an inch past the magazine cap.

Contrary to defendant's assertion, the law does not require the finding that defendant knew the shotgun was illegal. However, it does require that defendant was aware of the features that brought the weapon within the scope of the Act.

While the record shows that the shotgun was in the backseat of the vehicle, partially covered by a jacket, Gergen touched the shotgun when he moved the shotgun from the backseat to the floor of the vehicle. And while he may not have removed the shotgun from the jacket, Gergen's fingerprint was found on the gun's receiver indicating that he had handled the shotgun. When law enforcement officers approached the vehicle, there is evidence that they saw the shotgun, wrapped partially in the jacket, in plain view. Externally visible characteristics weigh heavily as to Gergen's knowledge of the shotgun's dangerous characteristics, *see United States v. Thompson,* 82 F.3d 849, 854 (9th Cir.1996). By touching the receiver and lifting the shotgun at the base of the barrel and given that the barrel length was so much shorter than the eighteen-inch minimum, Gergen may have become aware of the suspiciously short nature of the barrel of the shotgun. Thus, although the shotgun was partially covered by the jacket, because Gergen handled the shotgun at the base of the barrel, the trier of fact may rationally conclude beyond a reasonable doubt that Gergen was aware of the features of the shotgun that brought it within the scope of the Act.

Therefore, we find that sufficient evidence was presented by the government from which a fact finder, applying the beyond a reasonable doubt standard, could rationally choose the hypothesis that supports a finding of guilt.

Accordingly, we reverse Gergen's conviction and remand his case to the district court for retrial. We do not reach the sentencing issues raised by Gergen's appeal.

REVERSED and REMANDED.